1  LAW OFFICE OF SHARON L. LAPIN
   SHARON L. LAPIN SBN 165919
2  110 LOCH LOMOND DR.
   SAN RAFAEL, CA 94901
3  PHONE: (415) 258-1651
   e-mail: lapinlaws@juno.com
4

5

6  Attorney for Plaintiff

7

8

9           UNITED STATES DISTRICT COURT

10         NORTHERN DISTRICT OF CALIFORNIA

11

12  JOAN CHRISTINE M. CHUAKAY,          **CV 10        0051**
                                         CASE NO.
13            Plaintiff,                 COMPLAINT FOR:
    v.
14                                       1. VIOLATION OF THE TRUTH IN
    INDYMAC MORTGAGE SERVICING, A          LENDING ACT (15 U.S.C. § 1601 et
15  DIVISION OF ONEWEST, FSB;              seq.)
    INDYMAC BANK, F.S.B.; MTDS, INC.;    2. VIOLATION OF CALIFORNIA
16  ALLSTATE BANCORP, INC.;                ROSENTHAL ACT
    MORTGAGE ELECTRONIC               3. NEGLIGENCE
17  REGISTRATION SYSTEM, INC.; ROBIN   4. VIOLATION OF REAL ESTATE
    MORADZADEH; BENJAMIN P.               SETTLEMENT PROCEDURES ACT
18  COFFMAN; and DOES 1-20 inclusive,     (12 U.S.C. § 2605 et seq.)
                                         5. BREACH OF FIDUCIARY DUTY
19            Defendants.                 6. FRAUD
                                         7. VIOLATIONS OF CALIFORNIA
20                                          BUSINESS & PROFESSIONS CODE §
                                            17200 et seq.
21                                       8. BREACH OF CONTRACT
                                         9. BREACH OF IMPLIED COVENANT
22                                          OF GOOD FAITH AND FAIR
                                            DEALING
23                                       10. WRONGFUL FORECLOSURE

24                                       DEMAND FOR JURY TRIAL

25

26

27

28

                              1
                          COMPLAINT

1  Plaintiff Joan Christine M. Chuakay ("Plaintiff"), by and through her counsel, for her

2  Complaint against Defendants IndyMac Mortgage Servicing, A Division Of OneWest, FSB

3  ("IMS"), IndyMac Bank, F.S.B. ("IMB"), MTDS, Inc. ("MTDS"), Allstate Bancorp, Inc.

4  ("Allstate"), Mortgage Electronic Registration System, Inc., ("MERS") Robin Moradzadeh

5  ("Moradzadeh"), and Benjamin P. Coffman ("Coffman") (collectively "Defendants"), pleads as

6  follows:

7                                    **JURISDICTION AND VENUE**

8       1.      This Court has subject matter jurisdiction based on federal question under 28

9  U.S.C. §§ 1331 and 1367, 18 U.S.C. § 1964(c) and 15 U.S.C. § 1640(e). This is an action

10 asserting violations of federal statutes commonly known as the Truth In Lending Act ("TILA")

11 (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. §

12 2601 et seq.) and its implementing regulations, 12 C.F.R. Part 226, et seq. ("Regulation Z"), with

13 additional claims under California state law. These claims all arise out of the same controversy

14 and sequence of events.

15      2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) in that a

16 substantial part of the events giving rise to the claim occurred in this judicial district.

17      3.      This Court has personal jurisdiction over the parties as all Defendants engage in

18 business within the State of California and the Northern District and thus have sufficient

19 contacts.

20      4.      Jurisdiction of this Court for the pendent state claims is authorized by Federal

21 Rule of Civil Procedure 18(a).

22      5.      Defendants, and each of them, regularly engage in business in the State of

23 California and regularly provide residential mortgage loans and related services to residents in

24 the State of California who wish to obtain a residential mortgage loan, and who contact or are

25 contacted by a loan officer for assistance in obtaining the necessary financing.

26      6.      Plaintiff brings this action against Defendants for damages and harm resulting

27 from the Defendants' negligent, fraudulent and unlawful conduct concerning a residential

28 mortgage loan transaction with the Plaintiff.

1

2                                         **PARTIES**

3          7.      The residential property, subject to this Complaint, is located at 19999 Stevens

4    Creek Drive, # 107, Cupertino, County of Santa Clara, State of California ("Property").

5          8.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned

6    in this Complaint, Defendant IMS is a diversified financial marketing and/or services

7    corporations engaged primarily in residential mortgage banking and/or related businesses.

8    Plaintiff believes that Defendant IMS is a residential mortgage loan servicer.  Defendant IMS

9    represented to Plaintiff that it has the right to service Plaintiff's residential mortgage loan and

10   demand mortgage payments from Plaintiff.

11         9.      Plaintiff is informed and believes, and thereon alleges that at all times mentioned

12   in this Complaint, Defendant IMB is a diversified financial marketing and/or services

13   corporations engaged primarily in residential mortgage banking and/or related businesses.

14   Defendant IMB is believed to be a residential mortgage lender and was the original lender for

15   Plaintiff's residential mortgage loan.

16         10.     Plaintiff is informed and believes, and thereon alleges that at all times mentioned

17   in this Complaint, Defendant MTDS is a diversified financial marketing and/or services

18   corporations engaged primarily in residential mortgage banking and/or related businesses.

19   Defendant MTDS is believed to be employed by Defendant IMS to foreclose on Plaintiff's

20   Property.

21         11.     Defendant MERS is a Delaware corporation engaged in the business of holding

22   title to mortgages.  It does business in California as evidenced by inclusion of its name on the

23   Deed of Trust.  Defendant MERS was not registered to do business in California, and its agent

24   for service of process resigned March 25, 2009.  The Deed of Trust in this case states:

25                      "The beneficiary of this security instrument is MERS (solely as
                        nominee for Lender and Lender's successors and assigns) and the
26                      successors and assigns of MERS.  This security instrument secures
                        to Lender (I) repayment of the Loan and all renewals, extensions
27                      and modifications of the Note; and (ii) the performance of
                        Borrower's covenants and agreements under this Security
28                      Instrument and Note.  For this purpose, the Borrower irrevocably
                        grants and conveys to Trustee, in trust, with power of sale the

1    following described property.

2    12.    Defendant MERS' conduct, with respect to the Promissory Note and the Deed of

3    Trust in this case, is governed by "MERS Terms and Conditions" applicable to Defendants which

4    state that:

5    "MERS shall serve as mortgagee of record with respect to all such
     mortgage loans solely as a nominee, in an administrative capacity,
6    for the beneficial owner or owners thereof from time to time.
     MERS shall have no rights whatsoever to any payments made on
7    account of such mortgage loans, to any servicing rights related to
     such mortgage loans, or to any mortgaged properties securing such
8    mortgage loans. MERS agrees not to assert any rights (other than
     rights specified in the Governing Documents) with respect to such
9    mortgage loans or mortgaged properties. References herein to
     "mortgage(s)" and "mortgagee of record" shall include deed(s) of
10   trust and beneficiary under a deed of trust and any other form of
     security instrument under applicable state law."

11
     13.    As a result of said express conditions, and pursuant to California Commercial
12
     Code §§ 1201(21), 3301, and 3309, Defendant MERS has no beneficial interest or right to
13
     enforce the terms of the Promissory Note, because it is not in possession of the Promissory Note,
14
     and has no authority to conduct a non-judicial foreclosure sale.
15
     14.    At all times mentioned in this Complaint, Defendants Allstate, Moradzadeh, and
16
     Coffman sold Plaintiff the mortgage involved herein.
17
     15.    At all times mentioned in this Complaint, Defendant Coffman was the loan officer
18
     who sold Plaintiff the mortgage at issue.  At that time, Defendant Coffman was licensed by the
19
     California Department of Real Estate as a salesperson.  Defendant Coffman held himself out to
20
     Plaintiff as a loan officer employed by Defendant Allstate, and was acting within the course and
21
     scope of that employment when he came into contact with Plaintiff and sold Plaintiff the
22
     mortgage at issue.
23
     16.    At all times mentioned in this Complaint, Defendant Moradzadeh was a real estate
24
     Broker licensed by the State of California Department of Real Estate, and the Broker of record for
25
     Defendant Allstate.
26
     17.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein
27
     under the fictitious names Does 1 through 20, inclusive, and Plaintiff will amend this Complaint
28
     to allege such names and capacities as soon as they are ascertained.  Plaintiff is informed and

4
COMPLAINT

1  believes, and thereon alleges that each of said fictitiously named Defendants are responsible in

2  some manner for the wrongful acts complained of herein.

3      18.    Defendants, and each of them, at all relevant times herein were and still are agents

4  for one another, and acting under the course and scope thereof, with knowledge and consent of

5  each other.

6                              **GENERAL ALLEGATIONS**

7      19.    This action arises out of a loan related activity to the Property of which the Plaintiff

8  is the rightful owner.

9      20.    Beginning in 1998 and continuing through 2009, lenders, including Defendant

10 IMB, their agents, employees, and related servicers, including Defendant IMS, developed a

11 scheme to rapidly infuse capital into the home mortgage lending system by selling mortgages on

12 the secondary market, normally three to five times, to create a bankruptcy remote transaction. The

13 lenders, including Defendant IMB, their agents, employees, and related servicers, including

14 Defendant IMS, then pooled these mortgages into large trusts, securitizing the pool and selling

15 these securities on Wall Street as mortgage backed securities, bonds, derivatives and insurances,

16 often for twenty or thirty times the original mortgage. Such facts are so well known as to be

17 Judicially Noticeable under Federal Rule of Evidence 201 and California Evidence Code §§ 451

18 and 452.

19     21.    In selling these mortgage notes on the secondary market, Defendant IMB, along

20 with other Doe Defendants, failed to follow the basic legal requirements for the transfer of a

21 negotiable instrument and an interest in real property, including, but not limited to, written

22 assignments of the note and deed of trust, delivery of the deed of trust, or endorsements of the

23 note by the owner of the note, Plaintiff's Note and Deed of Trust included.

24     22.    In fact, no interest in Plaintiff's Mortgage Note, Deed of Trust or Property was ever

25 legally transferred to any of the named Defendants, and that the named Defendants, as well as the

26 Doe Defendants, are in effect straw men, and parties without any standing before this Court to

27 assert legal rights with respect to this contractual transaction.

28     23.    Defendant IMS thus could not have been given the right to service Plaintiff's loan.

1 | Accordingly, Plaintiff alleges Defendant IMS' representations to Plaintiff that it has the right to
2 | service Plaintiff's loan was and is fraudulent.

3 |     24.    Defendant MTDS, as agent for Defendant IMS or other Doe Defendants, due to the
4 | failures noted above, was not legally entitled to initiate foreclosure proceedings against Plaintiff's
5 | Property.

6 |     25.    Further, as this process became more and more profitable, the underwriting
7 | requirements were repeatedly reduced to ensure more and more unsuspecting borrowers.  As the
8 | lenders reduced the underwriting requirements, they introduced the concept of "churning" loans
9 | involving a calculated plan to repeatedly refinance borrowers' loans, taking as much equity as
10 | possible, and artificially driving up housing prices.  In this case, Defendants Allstate,
11 | Moradzadeh, and Coffman, in concert with Defendant IMB, placed Plaintiff into a predatory loan
12 | with toxic terms with the ultimate objective of forcing Plaintiff to refinance their loan in the near
13 | future for each of these Defendants' financial gain.

14 |     26.    Lenders, Defendant IMB included, regularly trained, directed, authorized and/or
15 | participated with mortgage brokers to implement this scheme, giving them monetary incentives to
16 | violate the borrower's trust.

17 |     27.    Finally, Lenders, Defendant IMB included, along with secondary market buyers,
18 | identified herein as Doe Defendants, would then conspire with servicers, such as Defendant IMS,
19 | to secrete the fraudulent transfers of Plaintiff's loan, as noted above, from Plaintiff, and to illegally
20 | extort monies from the Plaintiff with the threat of negative credit reporting and foreclosure.

21 |     28.    On or about January 11, 2007, Defendant Coffman approached Plaintiff telling her
22 | that he was the loan officer for Defendant Allstate, and solicited her to refinance her residence.

23 |     29.    Defendant Coffman advised Plaintiff that he could get her the "best deal" and the
24 | "best interest rates" available on the market.  Defendant Coffman knew or should have known that
25 | these assurances were false and misleading.

26 |     30.    When Plaintiff applied for this loan, she accurately described her income and
27 | provided Defendant Coffman with documentation of her income including tax returns, bank
28 | statements, W-2s and 1099s.  Plaintiff's income was fraudulently overstated on the loan

1  application by the Defendant Coffman.  Plaintiff had an income of $5,147.82 per month and the

2  loan application stated Plaintiff had an income of $10,460.00 at the time the loan was made.

3          31.      Plaintiff is now informed and believes, and thereon alleges that her income was

4  overstated on the loan application by Defendant Coffman, without her knowledge or permission.

5  Plaintiff is informed and believes, and thereon alleges that Defendant IMB's underwriters knew or

6  should have known of the fraudulent information on the loan application but approved the loan

7  anyway.

8          32.      Defendant Coffman acted negligently on the transaction by overstating Plaintiff's

9  income in order to qualify her for this refinance transaction.  The standard housing and debt to

10  income ratios are 33% for housing and 38% for debt to income.  Based on Plaintiff's monthly

11  income of $5,147.82 and using her minimum mortgage payments of $2,232.46, Plaintiff's ratio

12  was 43.36% for housing and 43.36% for debt to income. Using the fully amortized and/or fully

13  indexed rate of 7.814% (based on a margin of 2.80% plus the MTA index of 5.014%) mortgage

14  payments of $4,184.68, Plaintiff's  ratio was 81.29% for housing and 81.29% for  debt to income.

15  Based on the overstated monthly income of $10,460.00 and using the minimum mortgage

16  payments of $2,232.46, Plaintiff's ratio was 21.34% for housing and 21.34% for debt to income.

17          33.      Defendant Coffman advised Plaintiff that he, Defendant Coffman, could get

18  Plaintiff 100% financing for her residence, that her loan would be a fixed rate loan.  Plaintiff

19  stated to Defendant Coffman that she did not want a prepayment penalty attached to her loan, and

20  Defendant Coffman assured Plaintiff that no prepayment penalty would be attached to Plaintiff's

21  loan. Defendant knew or should have known that these representations were false and designed to

22  induce Plaintiff to accept this loan to her detriment.

23          34.      In fact, Defendant Coffman actually sold Plaintiff a predatory loan with toxic

24  terms. The loan, in the amount of $480,000.00, carried a teaser rate of 1.450% for the first month,

25  than adjusted from 1.450% to 9.950% based on MTA index plus a 2.80% profit margin,

26  negatively amortized up to 115%, included a 3-year prepayment penalty.  Plaintiff's initial

27  monthly payments for the loan was $1,318.46.

28          35.      The fees and commissions received by Defendants Allstate and Coffman for the

1   loan totaled $7,200.00.

2       36.    Defendant Coffman further advised Plaintiff that if the loan ever became

3   unaffordable, he would simply refinance it into an affordable loan, something Defendant Coffman

4   knew or should have known was false and misleading.  Defendant Coffman knew or should have

5   known that these misrepresentations were designed to induce Plaintiff to accept this loan to her

6   detriment.

7       37.    Plaintiff was not given a copy of any of the loan documents prior to closing as

8   required.  At closing, Plaintiff was only given a few minutes to sign the documents.  The notary

9   did not explain any of the loan documents nor was Plaintiff allowed to review them.  Plaintiff was

10   simply told to sign and initial the documents provided by the notary.

11       38.    Defendants Coffman, Allstate, and Moradzadeh knew or should have known that

12   these false and material misrepresentations were designed to induce Plaintiff to accept this loan to

13   her detriment.

14       39.    Plaintiff was not given a copy of any of the loan documents prior to closing as

15   required.  At closing, Plaintiff was only given a few minutes to sign the documents.  The notary

16   did not explain any of the loan documents nor was Plaintiff allowed to review them.  Plaintiff was

17   simply told to sign and initial the documents provided by the notary.  Further, Plaintiff did not

18   receive the required copies of a proper notice of cancellation.

19       40.    The facts surrounding this loan transaction were purposefully hidden to prevent

20   Plaintiff from discovering the true nature of the transaction and the documents involved therein.

21   Facts surrounding this transaction continue to be hidden from the Plaintiff to this day.

22       41.    On or about April 11, 2007, Plaintiff completed the loan on the Property.  The

23   terms of the loan were memorialized in a Promissory Note, which was secured by a Deed of Trust

24   on the Property.  The Deed of Trust identified Financial Title Corporation as Trustee, and

25   Defendant IMB as Lender.

26       42.    The Deed of Trust also identified Defendant MERS as nominee for the Lender and

27   Lender's successors and assigns, and the beneficiary.  Defendant MERS has no standing in this

28   forum.  It is not licensed to be and/or act as a nominee or a beneficiary of any of the Defendants,

1    nor does its Terms and Conditions, enumerated above, permit Defendant MERS to act in such

2    capacity. Defendant MERS was developed to be a document storage company, not a nominee or a

3    beneficiary of any of the Defendants. Therefore, the Deed of Trust must fail. Further, Defendant

4    MERS was not licensed to do business in the State of California, and was not registered with the

5    State of California at the inception of the loan involved herein.

6        43.    Subsequent to the closing of Plaintiff's residential mortgage loan, Defendant IMS

7    began demanding mortgage payments. However, Defendant IMS did not give Plaintiff notice that

8    it acquired servicing rights, as required under 12 U.S.C § 2605(c).

9        44.    Plaintiff remitted payments demanded by Defendant IMS. The payments

10   demanded monthly ranged from 2,232.46 to 4,184.68.

11       45.    On or about July 30, 2009, a Notice of Default was filed in Santa Clara County,

12   California, by Defendant MTDS. This notice, however, identified  Defendant MTDS as either the

13   original Trustee (which it was not), the substitute Trustee or acting as agent for the Beneficiary

14   under the Deed of Trust. The notice failed to explain when, how or under what authority

15   Defendant MTDS became a substitute Trustee or an agent for the Beneficiary.

16       46.    On or about November 2, 2009, Defendant MTDS noticed the Trustee Sale of the

17   Property. This notice now identified MTDS as the duly appointed Trustee under the Deed of

18   Trust. Again, the notice failed to explain when, how or under what authority Defendant MTDS

19   was appointed Trustee. Plaintiff alleges both the Notice of Default and the Notice of Trustee Sale

20   are defective.

21       47.    On or about November 3, 2009, a Qualified Written Request under RESPA

22   ("QWR" or "Request") was mailed to Defendant IMS. The QWR properly identified the Plaintiff,

23   identified the loan in question, a statement of reasons for Plaintiff's belief that the account was in

24   error due to fraud at the inception of the loan, improper charges added to the loan, the improper

25   increase in the principal balance of Plaintiff's loan, and requested specific servicing related

26   information from Defendant IMS. The QWR included a demand to rescind the loan under the

27   TILA provisions. Defendant IMS has yet to properly respond to this Request.

28       48.    Plaintiff alleges that none of the named Defendants are a "person entitled to

1  enforce" the security interest under the Note and the Deed of Trust, as defined in California
2  Commercial Code § 3301. Defendant IMB, in concert with other Doe Defendants sold Plaintiff's
3  home loan to other financial entities, which "pooled" large numbers of loans, put them into trusts,
4  and sold securities based on Plaintiff's loans. None of the named Defendants own the loan subject
5  to this action, and none are entitled to enforce the security interest.

6  49.  Defendant IMB regularly approved loans to unqualified borrowers, Plaintiff
7  included, and implemented unlawful lending practices. Further, Defendant IMB employed
8  brokers and loan officers, including Defendants Allstate, Moradzadeh and Coffman, who were
9  paid commissions based on the volume of loans they sold to consumers, Plaintiff included.
10  Defendant IMB's loan officers received a greater commission or bonus for placing borrowers in
11  loans with relatively high yield spread premiums. As such, borrowers, Plaintiff included, were
12  steered and encouraged into loans with terms unfavorable to them, or loans which the borrowers,
13  Plaintiff included, were not qualified to obtain.

14  50.  Defendant IMS, in concert with other Doe Defendants, are now attempting to
15  obtain putative legal title to Plaintiff's Property without having established that any of them was
16  ever a "person entitled to enforce" the security interest under the Note and the Deed of Trust.

17  51.  Each of the named Defendants, in fact, is not a "person entitled to enforce" said
18  interest. No legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's
19  Property was ever effected that gave any of the Defendants the right to be named a trustee,
20  mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiff's
21  Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property.

22  52.  Plaintiff entered into a loan transaction with Defendant IMB, which was subject to
23  finance charges, and which was initially payable to Defendant IMB under the Deed of Trust.

24  53.  Plaintiff's loan is subject to TILA provisions and its implementing regulations, 12
25  C.F.R. Part 226 ("Regulation Z"). TILA grants consumers a three-day right to cancel certain types
26  of real estate loan transactions. This three-day right to cancel applies to Plaintiff's loan with the
27  Defendants.

28  54.  When the loan was consummated, Plaintiff did not receive the required documents

1 and disclosures, including, but not limited to the TILA disclosure, and the required number of

2 copies of the Notice of Right to Cancel stating the date that the rescission period expires.

3       55.      Under TILA and Regulation Z, Defendants were required to clearly and

4 conspicuously disclose the "amount financed" and the "finance charge," among other things, in

5 connection with the loan.

6       56.      Defendant IMB and Defendant Moradzadeh, as agent of the Lender, were required

7 to provide Plaintiff with said disclosures, but failed to do so.

8       57.      Further, Defendant IMS fraudulently added costs and charges to the payoff amount

9 of the Note that were not justified or proper under the terms of the Note or the law.

10      58.      In pursuing the non-judicial foreclosure, Defendants IMS, MTDS, and other Doe

11 Defendants, represented that they have the right to payment under the Mortgage Note, payment of

12 which was secured by the Deed of Trust.  Whereas in fact, Defendants IMS, MTDS, and other

13 Doe Defendants, and each of them, are not the real parties in interest because they are not the legal

14 trustee, mortgagee or beneficiary, nor are they authorized agents of the trustee, mortgagee or

15 beneficiary, nor are they in possession of the Note, or holders of the Note, or non-holders of the

16 Note entitled to payment, as required by the California Commercial Code §§ 3301 and 3309, and

17 California Civil Code § 2924 et seq.  Therefore, Defendants IMS, MTDS, and other Doe

18 Defendants instituted foreclosure proceedings against Plaintiff's Property without rights under the

19 law.

20      59.      Named Defendants engaged in a civil conspiracy where by they secreted the nature

21 of the misdeeds alleged herein, the roles and identities of the various entities that were purportedly

22 handling the loan at any given time, and the transfers of the loan documents and negotiable

23 instruments that are the subject of this action.

24      60.      Defendant Coffman misrepresented material facts at the inception of the loan with

25 the intent of forcing Plaintiff to either pay large sums of money to the Defendants Allstate,

26 Moradzadeh, Coffman, and IMB to which they were not entitled, or to abandon the Property to a

27 foreclosure sale, resulting in profit for all the named Defendants.

28      61.      Defendant IMS misrepresented material facts regarding its right to service

1 Plaintiff's loan and demanded payments from Plaintiff, with the intent of forcing Plaintiff to pay

2 large sums of money to the Defendant IMS to which it was not entitled, or to abandon the

3 Property to a foreclosure sale, resulting in profit for Defendant IMS.

4      62.     The misrepresentations and allegations stated herein were all discovered within the

5 past year, such that any applicable statute of limitations are extended or should be extended

6 pursuant to the equitable tolling doctrine or other equitable principles. Even through the exercise

7 of reasonable diligence, Plaintiff would still not have been able to learn of or file her claim on

8 time.

9 **FIRST CAUSE OF ACTION**

10 **VIOLATION OF TRUTH IN LENDING ACT**

11 **15 U.S.C. § 1601 et seq.**

12 **(Against Defendant IMB)**

13      63.     Plaintiff incorporates here each and every allegation set forth above.

14      64.     The loan transaction at issue is a consumer credit transaction subject to the

15 provisions of TILA.

16      65.     TILA grants consumers a three-day right to cancel certain residential mortgage

17 loan transactions. Pursuant to 15 U.S.C. § 1635(a), the three-day cancellation period begins upon

18 the latter of the following events: (1) the "consummation of the transaction"; (2) the "delivery of

19 the information and rescission forms" required by that section; or (3) delivery of accurate

20 "material disclosures" required by TILA. (15 U.S.C. § 1635(a).) The "material disclosures" that

21 must be provided to the consumer include accurate disclosure of the annual percentage rate, all

22 finance charges and the amount financed. (15 U.S.C. § 1602(u).)

23      66.     If the required notice of cancellation is not provided, or if the required "material

24 disclosures" are not delivered, then the right to cancel extends to three years after the date of the

25 loan, or if the facts of the transaction were hidden from the consumer, three years from the date

26 consumer discovered the hidden facts. (15 U.S.C. § 1635(f).) If a consumer has the right to

27 rescind against a creditor, the right will also apply to any assignees of that creditor. (15 U.S.C. §

28 1641(c).)

1   67.   A consumer may exercise their right to cancel a transaction by delivering a written

2   notification of the consumer's intent to rescind to the creditor's place of business.  (12 C.F.R. §

3   226.23(a)(2).)  The consumer's notice to rescind is effective upon mailing.  The notice mailed to

4   the agent servicing the loan is effective notice on the holder of the mortgage.  (12 C.F.R. §

5   226.23(a)(2).)

6   68.   When a consumer rescinds a mortgage transaction, the security interest giving rise

7   to the right of rescission becomes void and the consumer is not liable for any amount, including

8   any finance or other charge.  (15 U.S.C. § 1635(b).)

9   69.   Within twenty (20) days after the receipt of a consumer's election to cancel the

10   transaction, the creditor must return to the consumer all money or property given, including all

11   interest and finance charges paid, and shall take all action necessary or appropriate to reflect the

12   termination of any security interest created under the transaction.  (15 U.S.C. § 1635(b); 15 C.F.R.

13   § 226.23(d).)

14   70.   Defendant IMB is a "creditor" as that term is defined by 15 U.S.C. §1602.  The

15   transaction between Plaintiff and Defendant IMB was a consumer loan transaction wherein

16   Defendant IMB extended credit to the Plaintiff, and such credit was secured by an interest

17   purportedly held by Defendant IMB in the Property.

18   71.   As a consumer credit transaction, Defendant IMB was required to provide Plaintiff

19   with the mandatory TILA disclosure statements and the notice of the Plaintiff's right to rescind,

20   specifying the date on which the three-day rescission period expires.

21   72.   Pursuant to Regulation Z, 12 C.F.R. § 226.23(a)(3), Plaintiff has a continuing right

22   to rescind the loan transaction for up to three years after consummation of the transaction pursuant

23   to 15 U.S.C. § 1635(a) and (f) and 12 C.F.R. § 226.23(b)(5).  Plaintiff hereby gives notice of

24   rescission by and through this Complaint.  Plaintiff will be willing and able to tender once the true

25   holder of the Note and Deed of Trust has been identified and the reciprocal amounts owed

26   between Plaintiff and Defendants have been determined.

27   73.   In the course of the transaction described herein, Defendant IMB violated TILA by

28   failing to provide required disclosures prior to consummation of the transaction as required by 15

1   U.S.C. § 1638,  failed to make required disclosures clearly and conspicuously in writing as

2   required by 15 U.S.C § 1632(a), 12 C.F.R § 226.5(a)(1), failed to timely deliver to Plaintiff TILA

3   notices as required by 15 U.S.C. § 1638(b), and failed to disclose all finance charge details, the

4   annual percentage rate based upon properly calculated and disclosed finance charges and amounts

5   financed as defined by 15 U.S.C. § 1602(u).

6       74.    Records from the transaction indicate that Defendant IMB extended credit to

7   Plaintiff without regard to her ability to pay, and falsified requisite income and appraisal

8   information to get the loan approved.  Defendant IMB has engaged in a pattern and practice of

9   extending credit to consumers, Plaintiff included, under high rate mortgages without regard to the

10  consumers' repayment ability or the actual value of the property.

11      75.    Had Defendant IMB properly and fully disclosed the terms of this loan pursuant to

12  TILA, Plaintiff would not have agreed to enter into this loan transaction or would have sought a

13  loan with more favorable terms elsewhere.

14      76.    Defendant IMB is liable to the Plaintiff in the amount of twice the finance charge,

15  actual damages to be established at trial, and costs in accordance with 15 U.S.C. § 1640(a).

16      77.    Plaintiff is also entitled to the following: rescission of the loan transaction; an

17  order requiring Defendants to take any and all actions necessary to terminate any security interest

18  in the Property, and a declaration by the Court that the security interest is void; expungement of

19  any and all foreclosure instruments, including but not limited, to any Notice of Default or Notice

20  of Trustee's Sale relating to Plaintiff's Property from any public record; removal of any and all

21  derogatory information reported to any and all credit reporting agency or bureau relating to the

22  transaction involved herein; the return to the Plaintiff of any money given by the Plaintiff to any

23  of the Defendants in connection with the loan transaction; statutory damages; costs and reasonable

24  attorney's fees; and such other relief as the Court may deem just and proper.

25      78.    As a result of Defendant IMB's conduct, Plaintiff has suffered and continues to

26  suffer damages in an amount to be proven at trial, which she is entitled to recover.

27      79.    As a result of Defendant IMB's conduct, Plaintiff is entitled to declaratory and

28  injunctive relief preventing Defendant IMB from taking any action to collect on the loan, and/or to

1  foreclose upon the Property, and/or to transfer the Property.

2                          **SECOND CAUSE OF ACTION**

3                  **VIOLATION OF CALIFORNIA ROSENTHAL ACT**

4                  **CALIFORNIA CIVIL CODE § 1788 et seq.**

5                              **(Against Defendant IMS)**

6        80.    Plaintiff incorporates here each and every allegation set forth above.

7        81.    Plaintiff alleges that Defendant IMS is a debt collector within the meaning of the

8  Rosenthal Act in that they regularly, in the course of their business, on behalf or themselves or

9  others, engage in the collection of debt.

10       82.    Defendant IMS used unfair and unconscionable means to collect a debt not owed

11  to Defendant IMS or its principal by sending deceptive letters and making phone calls to Plaintiff

12  demanding payment.

13       83.    Defendant IMS made false reports to credit reporting agencies about Plaintiff's

14  credit standing, falsely stating the amount of Plaintiff's mortgage debt, falsely stating that a debt

15  was owed to Defendant IMS, and falsely stating Plaintiff's payment history.

16       84.    Further, Defendant IMS increased the amount of Plaintiff's mortgage debt by

17  stating amounts not permitted by law or contract, including, but not limited to, excessive service

18  fees, attorneys' fees, and late charges.

19       85.    Defendant IMS' actions have caused Plaintiff actual damages, including, but not

20  limited to, severe emotional distress, such as loss of appetite, frustration, fear, anger, helplessness,

21  nervousness, anxiety, sleeplessness, sadness and depression.

22       86.    As a result of Defendant IMS' violations, Plaintiff is entitled to statutory damages

23  in an amount to be determined at trial, actual damages according to proof, and costs and

24  reasonable attorneys' fees.

25  ///

26  ///

27  ///

28  ///

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(Against all Defendants)**

87.     Plaintiff incorporates here each and every allegation set forth above.

88.     Defendants Allstate, Moradzadeh, and Coffman owed a duty to the Plaintiff to exercise reasonable skill and care in the exercise of the agency duties for the Plaintiff's benefit and best interest and to perform acts as brokers of loans in such a manner as to not cause Plaintiff harm.

89.     Defendants Allstate, Moradzadeh, and Coffman breached their duty to the Plaintiff when they used their knowledge and skill to direct Plaintiff into a loan for which she was not qualified based upon her income as stated in the documents provided to Defendants Allstate, Moradzadeh, and Coffman.

90.     Defendants Allstate, Moradzadeh, and Coffman further breached their duty to Plaintiff by directing her into a loan transaction that they may not have otherwise qualified for by industry standards, resulting in excessive fees paid by the Plaintiff and payments in excess of Plaintiff's ability to pay.

91.     Defendant IMB directly ordered, authorized and participated in Defendants Allstate's, Moradzadeh's, and Coffman's conduct.  As a result, Defendant IMB owed a duty to the Plaintiff to perform acts in such a manner as to not cause Plaintiff harm.  In addition, Defendant IMB breached its duty of care to the Plaintiff when it failed to make the required disclosures to the Plaintiff, failed to maintain the original Mortgage Note, and failed to properly assign or transfer the negotiable instrument(s).

92.     Defendant IMS owed Plaintiff a duty of due care.  Defendant IMS breached its duty of care to the Plaintiff when it took payments to which it was not entitled, charged fees it was not entitled to charge, and wrongfully made or otherwise authorized negative reporting of Plaintiff's creditworthiness to various credit bureaus.  Additionally, Defendant IMS had a statutory duty to Plaintiff to properly respond to Plaintiff's Qualified Written Request pursuant to 12 U.S.C. § 2605(e), and to give Plaintiff notice of the transfer of the servicing rights to their loan pursuant

1 │ to 12 U.S.C. § 2605(c).

2 │      93.    Defendant MERS owed Plaintiff a duty to perform its administrative function

3 │ recording, maintaining and transferring documents as it relates to Plaintiff's loan in a manner not

4 │ to cause Plaintiff harm. Defendant MERS breached its duty to Plaintiff when it failed to receive,

5 │ maintain or transfer the negotiable instrument related to Plaintiff's loan, communicated false

6 │ information to others regarding Plaintiff's loan, and authorized others to collect payments on

7 │ Plaintiff's mortgage and commence foreclosure proceedings.

8 │      94.    As a result of Defendants' negligence, Plaintiff suffered and continues to suffer

9 │ harm, and is entitled to damages according to proof and/or other relief as the Court deems just.

10 │ **FOURTH CAUSE OF ACTION**

11 │ **VIOLATION OF REAL ESTATE SETTLEMENT PROCEDURES ACT**

12 │ **12 U.S.C. § 2605 et seq.**

13 │ **(Against Defendants IMS and IMB)**

14 │      95.    Plaintiff incorporates here each and every allegation set forth above.

15 │      96.    The loan transaction between Plaintiff and Defendants is a mortgage loan covered

16 │ by RESPA.

17 │      97.    A violation of RESPA is also made unlawful under California state law by

18 │ Financial Code § 50505, which states: "[a]ny person who violates any provision of [RESPA] or

19 │ any regulation promulgated thereunder, violates this division [California Residential Mortgage

20 │ Lending Act]."

21 │      98.    Plaintiff is not certain at this time exactly which of Defendants were actually the

22 │ servicer of the loan at any given time. Pursuant to 12 U.S.C. §§ 2605(b) and 2605(c), Defendants

23 │ IMB and IMS had a statutory obligation to notify Plaintiff, within 15 days, of the assignment, sale,

24 │ or transfer of the servicing rights to Plaintiff's loan. Defendants IMB and IMS failed to provide

25 │ Plaintiff notice of the assignment, sale, or transfer of servicing rights to Plaintiff's loan.

26 │      99.    Defendant IMB violated RESPA at the time of the closing of the loan subject to

27 │ this Complaint by failing to correctly and accurately comply with the disclosure requirements of

28 │ 12 U.S.C § 2601 et seq. and Regulation X.

1      100.    Plaintiff has served Defendant IMS a QWR that identified Plaintiff's name, loan

2  number, and a statement of reasons for Plaintiff's belief that the loan was in error.  Plaintiff's

3  QWR, among other things, also sought rescission of the loan and requested production of service

4  related documents.  Defendant IMS violated RESPA, 12 U.S.C. § 2605(e)(2), by failing and

5  refusing to provide a proper written explanation or response to Plaintiff's QWR.

6      101.    Defendant IMB further violated 12 U.S.C. § 2607 by receiving "kickbacks" or

7  referral fees disproportional to the work performed.

8      102.    Defendant IMS violated RESPA, 12 U.S.C. § 2605(e)(2)(A), by failing to make

9  appropriate corrections to Plaintiff's account in response to the QWR, including the crediting of

10  any late charges or penalties and failing to transmit written notice of such corrections to Plaintiff.

11      103.    Defendant IMS violated RESPA, 12 U.S.C. § 2605(e)(2), by refusing to cease its

12  collection efforts after receiving Plaintiff's QWR.

13      104.    Defendant IMS violated RESPA, 12 U.S.C. § 2605(e)(3), by providing information

14  to consumer reporting agencies regarding overdue payments allegedly owed by Plaintiff that were

15  related to their QWR.

16      105.    As a result of Defendants IMS' and IMB's failure to comply with RESPA, Plaintiff

17  has suffered and continues to suffer damages and costs of suit.  Plaintiff is entitled to recover

18  statutory damages, actual damages in an amount to be determined at trial, and costs and

19  reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

### (Against Defendants Coffman, Allstate, IMB, and Moradzadeh)

23      106.    Plaintiff incorporates here each and every allegation set forth above.

24      107.    Defendants Coffman, Moradzadeh, Allstate, and IMB were all agents for the

25  Plaintiff by express and implied contract and by operation of law.

26      108.    Defendant IMB gained a fiduciary duty to Plaintiff by directly ordering,

27  authorizing and participating in Defendants Coffman's, Allstate's, and Moradzadeh's tortious

28  conduct.

1  109.  Defendant IMB regularly trained, directed, authorized and participated with
2  mortgage brokers to implement this scheme, including giving them monetary incentives to violate
3  the borrower's trust.

4  110.  Plaintiff hired Defendants Allstate, Moradzadeh, and Coffman as her agents for the
5  purpose of obtaining a loan to refinance the Property.

6  111.  Pursuant to an agreement between the parties, Plaintiff agreed to pay Defendants
7  Allstate, Moradzadeh, and Coffman a commission from the proceeds of her loan and agreed to
8  pay Defendant IMB substantial fees to originate her loan.

9  112.  Defendants Allstate, Moradzadeh, and Coffman, by and through their agents, and
10  Defendant IMB through its interjection into the brokerage of the loan as described above, owed a
11  fiduciary duty to the Plaintiff to act primarily for her benefit, to act with proper skill and diligence,
12  and not to make a personal profit from the agency at the expense of their principal, the Plaintiff.

13  113.  As Plaintiff's agents, Defendants Coffman, Moradzadeh, Allstate, and IMB owed
14  Plaintiff a duty of loyalty and a duty to deal fairly with her at all times.

15  114.  Defendants Coffman, Moradzadeh, Allstate, and IMB willfully or recklessly
16  breached their fiduciary duty and duty of loyalty by obtaining a mortgage loan for her that had
17  unfavorable terms and that she could not ultimately afford, by not disclosing the negative
18  consequences of said loan, by securing a secret profit for themselves, by not properly complying
19  with TILA and RESPA requirements, and by engaging in unfair business practices.

20  115.  Defendant IMB, through its own actions, interfered with Defendants Coffman's
21  and Moradzadeh's fiduciary obligations by offering Defendants Moradzadeh and Coffman,
22  respectively, training, direction and incentives to breach their fiduciary duty by means of creating
23  and participating in a scheme that created an illusion to consumers that they are being informed of
24  all of the material facts, when in fact they are not.

25  116.  Defendant Moradzadeh, through her actions, interfered with Defendant Coffman's
26  fiduciary obligations by offering Defendant Coffman training, direction and incentives to breach
27  his fiduciary duty by means of creating and participating in a scheme that created an illusion to
28  consumers that they are being informed of all of the material facts, when in fact they are not.

1    117.   Plaintiff has been damaged as a result of Defendants' breach, and is entitled to
2  actual damages.

3    118.   Defendants consciously disregarded Plaintiff's rights, deliberately breaching their
4  respective fiduciary duties, showing willful misconduct, malice, fraud, wantonness, oppression
5  and entire want of care, thus authorizing the imposition of punitive damages pursuant to
6  California Civil Code § 3294.

7                           **SIXTH CAUSE OF ACTION**
8                                    **FRAUD**
9                           **(Against all Defendants)**

10    119.   Plaintiff incorporates here each and every allegation set forth above.

11    120.   As alleged herein, Defendants Coffman, Moradzadeh, and Allstate made false
12  representations to Plaintiff regarding material facts, including but not limited to, interest rates,
13  financing options, availability of refinancing, and Plaintiff's qualification for this loan, at the
14  inception of this transaction, designed to fraudulently induce Plaintiff to enter into this
15  transaction.

16    121.   As alleged herein, Defendant IMB regularly trained, directed, authorized and
17  participated with mortgage brokers to implement this fraudulent scheme, training brokers and loan
18  officers, including Defendants Coffman, Moradzadeh, and Allstate to direct unsuspecting
19  borrowers, Plaintiff included, into toxic loans, giving brokers direction as to which toxic loans to
20  direct borrowers into, directing their underwriters to approve loans to these unqualified borrowers
21  and giving the brokers and loan officers monetary incentives to violate the borrower's trust.

22    122.   As alleged herein, Defendant IMS misrepresented to Plaintiff that IMS has the
23  right to collect monies from Plaintiff on its behalf or on behalf of others when Defendant IMS had
24  no legal right to collect such monies.

25    123.   As alleged herein, Defendant MERS misrepresented to Plaintiff on the Deed of
26  Trust that it is a qualified beneficiary with the ability to assign or transfer the Deed of Trust and/or
27  the Note and/or substitute trustees under the Deed of Trust.  Further, Defendant MERS
28  misrepresented that it followed the applicable legal requirements to transfer the Note and Deed of

1  Trust to subsequent beneficiaries.

2      124.    As alleged herein, Defendant MTDS misrepresented to Plaintiff that Defendant

3  MTDS was entitled to enforce the security interest and has the right to institute a non-judicial

4  foreclosure proceeding under the Deed of Trust when they filed a Notice of Default on July 30,

5  2009.  In fact, Defendant MTDS was not a trustee, mortgagee or beneficiary, nor is it an

6  authorized agent of the trustee, mortgagee or beneficiary, nor is it in possession of the Note, or

7  holder of the Note, or non-holder of the Note entitled to payment, as required by California

8  Commercial Code §§ 3301 and 3309.  As a result, Defendant MTDS did not have the right to

9  initiate foreclosure proceeding herein under California Civil Code § 2924 et seq.

10     125.    These material representations made by the named Defendants were false.

11     126.    The named Defendants knew that these material representations were false when

12  made, or these material representations were made with reckless disregard for the truth.

13     127.    The named Defendants intended that Plaintiff rely on these material

14  representations.

15     128.    Plaintiff reasonably relied on said representations.

16     129.    As a result of Plaintiff's reliance, she was harmed and suffered damages.  Plaintiff's

17  reliance on Defendants' false material representations was a substantial factor in causing Plaintiff

18  harm.

19     130.    Additional evidentiary facts constituting fraud in this matter are within named

20  Defendants' knowledge and possession and have been secreted by named Defendants.

21     131.    These named Defendants, and each of them, conspired together to perpetrated the

22  fraud alleged herein over the course of several years.

23     132.    These named Defendants are guilty of malice, fraud and/or oppression, as defined

24  in California Civil Code § 3294.  The named Defendants' actions were malicious and done

25  willfully, in conscious disregard of the rights and safety of Plaintiff in that the actions were

26  calculated to injure Plaintiff.  As such, Plaintiff is entitled to recover, in addition to actual

27  damages, punitive damages to punish Defendants and to deter them from engaging in future

28  misconduct.

## SEVENTH CAUSE OF ACTION

## VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

### (Against all Defendants)

133.   Plaintiff incorporates here each and every allegation set forth above.

134.   Defendant IMS' violation of the Rosenthal Act, RESPA, its negligence, fraud and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

135.   Defendant IMB' violation of TILA, RESPA, its negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

136.   Defendant MERS' negligence, fraud, and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

137.   Defendant MTDS' negligence, fraud and illegal foreclosure activities, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

138.   Defendant Allstate's negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq.

139.   Defendant Moradzadeh's negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Protessions Code § 17200 et seq.

140.   Defendant Coffman's negligence, breach of fiduciary duty, fraud, breach of contract and breach of the implied covenant of good faith and fair dealing, as alleged herein, constitute unlawful, unfair, and/or fraudulent business practices, as defined in the California

1 | Business and Professions Code § 17200 et seq.

2 |     141.    As a result of Defendants' wrongful conduct, Plaintiff has suffered various

3 | damages and injuries according to proof at trial.

4 |     142.    Plaintiff seeks injunctive relief enjoining Defendants from engaging in the unfair

5 | business practices described herein.

6 |     143.    Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs

7 | of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and

8 | proper.

9 | **EIGHTH CAUSE OF ACTION**

10 | **BREACH OF CONTRACT**

11 | **OR**

12 | **IN THE ALTERNATIVE**

13 | **RESCISSION OF CONTRACT**

14 | **(Against Defendants Coffman, Moradzadeh, and IMB)**

15 |     144.    Plaintiff incorporates here each and every allegation set forth above.

16 |     145.    Plaintiff entered into an agreement with Defendants IMB, Coffman, and

17 | Moradzadeh, whereby Defendants promised to provide Plaintiff with an affordable loan.

18 |     146.    Plaintiff fully performed her duties under the contract with Defendants Coffman,

19 | Moradzadeh, and IMB.

20 |     147.    Defendants Coffman, Moradzadeh, and IMB breached their agreement with

21 | Plaintiff when they sold Plaintiff a predatory loan with toxic terms.  Further, Defendants Coffman,

22 | Moradzadeh, and IMB breached their agreement with Plaintiff by failing to exercise reasonable

23 | efforts and due diligence as promised, thus failing to provide Plaintiff with an affordable loan.

24 | Defendants Coffman, Moradzadeh, and IMB also breached their agreement with Plaintiff by

25 | committing wrongful acts, including but not limited to, intentionally or negligently failing to

26 | obtain payment and interest rates as promised, failing to submit an accurate loan application,

27 | failing to supervise, failing to provide loan documents for Plaintiff's review prior to closing, and

28 | failing to explain the loan documents to the Plaintiff.  Defendants further breached their duties

1  when they failed to refinance the mortgage as promised, resulting in Plaintiff's payments
2  increasing substantially shortly after the loan agreement was signed.

3       148.   This breach by the Defendants Coffman, Moradzadeh, and IMB have sent Plaintiff
4  into foreclosure instead of financing her mortgage as agreed.

5       149.   In the alternative, no contract existed between Plaintiff and Defendants Coffman,
6  Moradzadeh, and IMB because of a mutual mistake relating to the basic or material contractual
7  terms alleged above.  This mutual mistake was not caused by Plaintiff's neglect of her legal
8  obligations.  Defendants Coffman, Moradzadeh, and IMB were aware of Plaintiff's mistaken
9  belief with respect to the material terms alleged above, and unfairly utilized that mistaken belief in
10 a manner that enabled them to take advantage of the Plaintiff.

11      150.   As a result of Defendants' wrongful conduct, Plaintiff has suffered various
12 damages and injuries according to proof at trial.

13      151.   Plaintiff further seeks rescission of the loan, restitution, disgorgement of sums
14 wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as
15 the Court may deem just and proper.

16                          **NINTH CAUSE OF ACTION**

17      **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

18              **(Against Defendants Coffman, Moradzadeh, and IMB)**

19      152.   Plaintiff incorporates here each and every allegation set forth above.

20      153.   A duty of good faith and fair dealing were implied by law into the contract at issue
21 in this action at its inception. Defendants Coffman's, Moradzadeh's, and IMB's duties of good
22 faith and fair dealing included, but were not limited to, the following: (1) Defendants had a duty to
23 pay at least as much regard to Plaintiff's financial interests as to Defendants' financial interests; (2)
24 Defendants had a duty to comply with all applicable laws in the State of California; (3)
25 Defendants agreed to act in good faith and deal fairly with Plaintiff when they entered into the
26 mortgage and accepted payments from Plaintiff.  Defendants Coffman, Moradzadeh, and IMB
27 thereby assumed obligations of good faith and fair dealing toward Plaintiff and thereby agreed to
28 abide by such obligations.

1      154.   Nevertheless, Defendants Coffman, Moradzadeh, and IMB breached the implied

2  duty of good faith and fair dealing owed to Plaintiff by, among other things, performing acts and

3  failing to act as alleged herein, and by failing to perform the duties specifically enumerated herein.

4      155.   Defendants Coffman, Moradzadeh, and IMB further breached the duty of good

5  faith and fair dealing by:

6      a.   Failing to pay at least as much regard to Plaintiff's interests as to Defendants'

7           interests;

8      b.   Failing to disclose to Plaintiff the true nature of the loan that is the subject of this

9           action;

10     c.   Failing to give Plaintiff the requisite notice and disclosures;

11     d.   Directing Plaintiff into a toxic loan.

12     156.   In the absence of a reasonable basis for doing so, and with full knowledge and

13  reckless disregard of the consequences, Defendants Coffman, Moradzadeh, and IMB acted in bad

14  faith toward Plaintiff by, among other things, failing to comply with all applicable laws.

15     157.   Plaintiff is informed and believes, and thereon alleges that Defendants Coffman,

16  Moradzadeh, and IMB have a pattern and practice of similar bad faith conduct toward other

17  borrowers who are similarly situated.

18     158.   As a proximate result of Defendants Coffman's, Moradzadeh's, and IMB's

19  breaches of the covenant of good faith and fair dealing alleged herein, Plaintiff has suffered

20  damages, incurred attorneys' fees and costs to recover the Property, suffered a loss of reputation

21  and goodwill, suffered emotional distress, and suffered other economic losses and damages in

22  amounts not yet fully ascertained but within the jurisdiction of this Court.

23     159.   Defendants Coffman, Moradzadeh, and IMB pursued said course of conduct

24  intentionally and maliciously and in conscious disregard of the rights of the Plaintiff.  Further,

25  Defendants Coffman's, Moradzadeh's, and IMB's refusal to follow through with their duty to

26  assist Plaintiff was made with the intent to intimidate, vex and harass Plaintiff so as to discourage

27  her from pursuing her legal rights under the mortgage law.  In order to deter such conduct of

28  Defendants Coffman, Moradzadeh, and IMB in the future, and to prevent repetition thereof as a

1  practice, by way of punishment and as example, Plaintiff prays that exemplary damages be

2  awarded according to proof at trial pursuant to California Civil Code § 3294.

### TENTH CAUSE OF ACTION

### WRONGFUL FORECLOSURE

### (Against Defendants IMS and MTDS)

6      160.   Plaintiff incorporates here each and every allegation set forth above.

7      161.   California Commercial Code § 3301 specifically identifies the persons who are

8  entitled to enforce a security interest by, among other means, instituting a foreclosure sale under a

9  deed of trust. The statute is exclusive rather than inclusive in nature, and those who are not

10  identified do not have the right to enforce such an interest.

11      162.   Defendants IMS and MTDS were not, and are not, in possession of the Note, are

12  not beneficiaries, assignees or employees of the person or entity in possession of the Note, and are

13  not otherwise entitled to payment. Defendants IMS and MTDS are not "person[s] entitled to

14  enforce" the security interest on the Property, as that term is defined in Commercial Code § 3301.

15      163.   Accordingly, Defendants IMS and MTDS are not entitled to utilize California Civil

16  Code § 2924 et seq. (California's non-judicial foreclosure scheme) to wrongfully convert

17  Plaintiff's Property.

18      164.   In the Notice of Trustee Sale, Defendant MTDS claims that it was the duly

19  appointed Trustee pursuant to the Deed of Trust but fails to identify the holder of the beneficial

20  interest. None of the Defendants are not in possession of the Note and, accordingly, none are not

21  entitled to enforce the security interest on the Property.

22      165.   Given that none of the named Defendants ever acquired a right to enforce the Note

23  and Deed of Trust due to defective transfers in this case, Defendants IMS and MTDS did not have

24  the right to commence foreclosure proceedings and as a result recorded defective Notices of

25  Default and Notices of Trustee's Sale, in direct violation of the requirements set forth in

26  California Civil Code § 2923.5. As a result, Plaintiff could not exercise their rights to investigate

27  the circumstances of the foreclosure proceedings.

28      166.   Defendants IMS' and MTDS' failure to comply with the statutory requirements

1  denied Plaintiff the opportunity to exercise her statutory rights, which the statute was specifically

2  designed to protect.

3      167.   As a direct and proximate result of said Defendants' wrongful actions, Plaintiff has

4  suffered damages, including, but not limited to, direct monetary loss, consequential damages, and

5  emotional distress.

6      168.   In committing the wrongful acts alleged herein, said Defendants acted with malice,

7  oppression and fraud.  Said Defendants' willful conduct warrants an award of exemplary damages,

8  in an amount sufficient to punish the wrongful conduct and to deter such misconduct in the future.

9  **DEMAND FOR JURY TRIAL AND PRAYER FOR DAMAGES**

10  Plaintiff Joan Christine M. Chuakay demands a trial by jury.

11  WHEREFORE, Plaintiff prays for judgment and order against Defendants, as follows:

12  1.   That judgment be entered in Plaintiff's favor and against Defendants, and each of

13      them;

14  2.   For an order requiring Defendants to show cause, if they have any, why they should

15      not be enjoined as set forth below, during the pendency of the action;

16  3.   For a temporary restraining order, preliminary and permanent injunction preventing

17      Defendants, or anyone acting in concert with them, from collecting on the subject

18      loan and from causing the Property to be sold, assigned or transferred to a third

19      party;

20  4.   For an order stating that Defendants engaged in unfair business practices;

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

5.     For damages, disgorgement, and injunctive relief under California's common and statutory law of unfair business practices;

6.     For compensatory and statutory damages, attorneys' fees and costs according to proof at trial;

7.     For exemplary damages in an amount sufficient to punish Defendants' wrongful conduct and deter future misconduct;

8.     For such other and further relief as the Court may deem just and proper.

DATED: January 4, 2010

Respectfully submitted

SHARON L. LAPIN
Attorney for Plaintiff Joan Christine M. Chuakay